**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 12, 2019**

# In the Court of Appeals of Georgia

A18A1826. WILSON v. THE STATE.

McMILLIAN, Judge.

Scotty Wilson was convicted by a jury of armed robbery, burglary, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. The trial court denied his motions for new trial, and Wilson appeals from that order. For the reasons set forth below, we affirm in part, vacate in part, and remand to the trial court for further proceedings consistent with this opinion.

1. At the outset, we must address an all too common occurrence in criminal cases – extraordinary delay in post-conviction proceedings. Wilson's conviction was entered on May 12, 2004, and his timely motion for new trial was filed by his trial counsel on May 28, 2004. On December 5, 2005, a new attorney entered an appearance on behalf of Wilson. Several years passed before the trial court scheduled

a hearing on the motion for new trial for September 16, 2008, and ordered that Wilson be produced by Augusta State Medical Prison for the hearing. However, the record does not reflect that a hearing took place at that time, and it appears that nothing else occurred in the case for nearly five more years until June 2013 when yet another attorney entered an appearance of counsel for Wilson. Hearings were then scheduled for May 2014, June 2014, October 2016, and November 2016, but the record does not reflect that these hearings were ever held either. The trial court finally held a hearing on January 31, 2017, over 12 years after the first motion for new trial was filed,[1] and it entered its order denying the motions nearly 14 years after the original motion was filed. This extreme delay is inexcusable, and once again we must admonish the bench and bar that

> [t]his sort of extraordinary post-conviction, pre-appeal delay puts at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. It is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay. That duty unfortunately was not fulfilled in this case.

*Robinson v. State*, 334 Ga. App. 646, 647 (1) (780 SE2d 86) (2015).

---

[1] Wilson's attorney filed his amended motion for new trial on the day preceding the hearing.

2. Turning to the merits, viewed in the light most favorable to the verdict,[2] the evidence shows that on October 6, 2003, Barry Taber, Jr., Taber's girlfriend, Charles Joseph Johnson, and Wilson gathered at Katina White's residence. Wilson, Taber, and Johnson left White's home ostensibly to retrieve Johnson's clothes from his aunt's home. Taber drove the other men in his truck, following Johnson's and Wilson's instructions because he did not know where to go. Unknown to Taber, Johnson and Wilson had instead directed him to drive to the home of Johnson's acquaintance, Patrick Lay.

Lay was not home, and the men pried open Lay's back door and entered his home, and Wilson took a can of Coca-Cola. The men then left Lay's home and hid outside of his house waiting for him to return. When Lay arrived, the men, all wearing masks, approached him. Lay testified that one man, whom Taber later identified as Wilson, pointed a gun at him. Lay also testified that a different man, whose voice Lay recognized as Johnson's, yelled "[g]ive me all your money[,]" and Johnson took money from Lay's shirt pocket and billfold, totaling three hundred and sixty dollars. The men then fled to Taber's truck, and Taber drove them back to White's home. At White's home, Wilson split the money between the men, with Taber receiving one

---

[2] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

3

hundred dollars and Johnson receiving around one hundred and ten dollars. Taber's girlfriend testified that Taber told her about the robbery after she and Taber left White's home together, and White testified that Wilson, whom she was dating, told her about the robbery after Taber and his girlfriend left. Two days later, White reported the robbery to the Richmond County Sheriff's Office. Wilson was charged with and convicted of armed robbery, burglary, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. This appeal followed.

(a) Wilson argues that the trial court erred by admitting Taber's testimony about the crime without proving a conspiracy under former OCGA § 24-3-52, which stated that "the confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself." "However, [OCGA] § 24-3-52 [was] designed to protect a defendant from the hearsay confession of a co-conspirator who does not testify at trial." (Footnote omitted.) *Brown v. State*, 266 Ga. 633, 635 (2) (469 SE2d 186) (1996). This Court and the Supreme Court of Georgia "have repeatedly held that where the co-conspirator testifies at trial and is subject to cross-examination, the concerns of § 24-3-52 are satisfied and the Code

section had no application." (Footnote omitted.) Id. Because Taber testified at trial, the code section does not apply, and this enumeration is without merit.

(b) Wilson also argues that the trial court erred by admitting the hearsay testimony of Taber's girlfriend and White, even though they were not present at the crime. White's testimony that Wilson told her that he was involved in the robbery was admissible as an admission by a party-opponent against his penal interest. *Stanford v. State*, 272 Ga. 267, 270 (4) (528 SE2d 246) (2000). Additionally, for the reasons set forth in Division 2 (a), Wilson's argument that the trial court erred by allowing Taber's girlfriend's testimony that Taber told her about the crime without proving a conspiracy also fails because Taber testified at trial. *Brown*, 266 Ga. at 635 (2).

Nonetheless, if the girlfriend's testimony was inadmissible for reasons not argued by Wilson, it would nonetheless be cumulative of Taber's and White's testimony and its admission would have been harmless error. See *Miller v. State*, 325 Ga. App. 764, 772 (4) (c) (754 SE2d 804) (2014) ("The erroneous admission of hearsay is harmless where, as here, legally admissible evidence of the same fact is introduced. In such a case, the hearsay is cumulative and without material effect on the verdict.") (Citation and punctuation omitted.). Accordingly, this enumeration fails as well.

5

(c) Wilson further argues that Taber's testimony was insufficient to convict him of his crimes. We disagree. "When evaluating a challenge to the sufficiency of the evidence, we view all of the evidence admitted at trial in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *McGruder v. State*, 303 Ga. 588, 590 (II) (814 SE2d 293) (2018). This "limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." (Citation and punctuation omitted.) Id. See also *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Former OCGA § 24-4-8,[3] applicable at the time of Wilson's trial, provided in part that in "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient." (Citation omitted.) *Lindsey v. State*, 295 Ga. 343, 347 (3) (760 SE2d 170) (2014). "Thus, the State had to present the testimony of at least one other witness or evidence of such corroborating circumstances; however,

---

[3] Under the new Georgia Evidence Code, effective for trials conducted on or after January 1, 2013, the necessity for corroboration of accomplice testimony is now codified at OCGA § 24-14-8.

the required additional evidence could be circumstantial, slight, and in and of itself, insufficient to warrant a conviction of the charged crime." Id.

Here, White's testimony that Wilson told her about his involvement in the robbery corroborated Taber's testimony and was admissible as an admission by a party-opponent against his penal interest. *Stanford*, 272 Ga. at 270. Thus, the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Wilson was guilty of the crimes of which he was convicted. See *Crawford v. State*, 294 Ga. 898, 901 (1) (757 SE2d 102) (2014) (to corroborate an accomplice's testimony, the State must adduce "some independent evidence tending to show that the defendant himself was a participant in the crimes").

3. Wilson also asserts that the trial court erred by denying his motions for new trial as abandoned instead of ruling on the merits of his arguments that the verdict of the jury is contrary to evidence and the principles of justice and equity under OCGA

§ 5-5-20 and is contrary to the weight of evidence pursuant to OCGA § 5-5-21.[4] We agree.

At the conclusion of Wilson's hearing on the motion for new trial,[5] his attorney argued that because Taber's girlfriend's testimony and White's testimony was inadmissible hearsay, the only "true evidence" was Taber's testimony, which was insufficient to convict Wilson in the absence of the State showing a conspiracy between the parties. The trial court then directed Wilson to brief "these issues," within 15 days and directed the State to respond to Wilson's arguments. Wilson failed to brief the issues, and on March 2, 2018, the trial court entered an order denying the motion for new trial, finding in part that:

> The Motion for New Trial was filed on May 28, 2004. The trial transcript was filed September 15, 2005. Twelve years later, counsel brought the defendant's motion for new trial on for hearing at which hearing counsel requested to argue the motion by written brief. The request was granted and counsel was directed to file the movant's brief

---

[4] In his motion for a new trial, Wilson also asserted that trial counsel was ineffective for various reasons and that the trial court failed to perform a proper colloquy in order to make the determination that his declining to testify was freely, voluntarily, and intelligently made. Because Wilson has asserted no argument on appeal as to these issues, and does not request that the trial court consider the merits on remand, we only address Wilson's claim that the trial court should have ruled on the merits of his motion for new trial on the general grounds.

[5] Wilson and his trial counsel testified at the motion for new trial hearing.

8

within 10 days, and further directed reply briefs of the district attorney to be filed 10 days after receipt of the brief of the movant. After 15 months, no brief of the movant had been filed.

The Motion for New Trial has been abandoned by the defendant's failure to pursue the matter within a reasonable time. (See *Vaughan v. State*, 161 Ga. App. 265, 287 SE2d 728 (1982).)

We start our analysis by considering the standard that the trial court must apply on a motion for new trial under the general grounds. Where, as here, the evidence is legally sufficient to sustain a conviction, a trial court may nonetheless grant a new trial if the verdict of the jury is "contrary to evidence and the principles of justice and equity," under OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence" under OCGA § 5-5-21. (Citation omitted.) *Whitmire v. State*, 343 Ga. App. 282, 287 (2) (807 SE2d 46) (2017). These are known as the "general grounds," and when a defendant properly raises them in a timely motion for new trial, they require the trial judge to exercise broad discretion to sit as a "thirteenth juror." Id. "In exercising that discretion, the trial judge must consider some of the things that she [or he] cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." Id. Although not boundless, this discretion is substantial and "should be exercised

9

with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id.

The trial court has the affirmative obligation to rule on the merits of the motion for new trial on the general grounds, and where it appears that a trial court has refused to exercise its discretion, the appellate courts will vacate the order denying the motion for new trial and remand for consideration under the proper legal standard. *Hartley v. State*, 299 Ga. App. 534, 540 (3) (683 SE2d 109) (2009) (holding that the trial court erred by finding that the defendant waived and abandoned motion for new trial claims raised under OCGA §§ 5-5-20 and 5-5-21 by not arguing those claims at a separate evidentiary hearing when they were already properly raised); *State v. Jones*, 284 Ga. 302, 303-04 (2) (667 SE2d 76) (2008).

Here, the trial court's order expressly declined to consider the merits of Wilson's motion on the general grounds even though the argument had been raised in the motion for new trial and an evidentiary hearing had taken place with Wilson's counsel arguing the general grounds. Cf. *Mimms v. State*, 254 Ga. App. 483, 485-86 (1) (562 SE2d 754) (2002) (trial court did not err in denying a motion for new trial without a hearing when the defendant's attorney failed to show up to the scheduled hearing without a valid leave of absence in place), aff'd sub nom., *Jones v. State*, 276

10

Ga. 171 (575 SE2d 456) (2003); *Page v. Ginn*, 187 Ga. App. 143, 145 (1) (369 SE2d 517) (1988) (trial court was "justified in deciding the motion [for new trial] on the briefs originally submitted" where parties had abandoned their right to a hearing on the motion); *Moody v. State*, 14 Ga. App. 523, 525 (81 SE 588) (1914) (where a motion for new trial was not filed, it must be treated as abandoned). Even though Wilson's counsel should have filed a brief on the hearsay issues as directed by the trial court, that omission constituted an abandonment of the opportunity to make further argument on those issues, rather than the entire motion for new trial. *Hartley*, 299 Ga. App. at 540 (3); *Jones*, 284 Ga. at 303-04 (2).

Accordingly, we vacate the portion of the trial court's order declining to rule on the merits of Wilson's motion for new trial on the general grounds and remand the case for the trial court to consider the general grounds under the appropriate standard.

*Judgment affirmed in part, vacated in part, and case remanded in part with direction. Barnes, P. J., and Reese, J., concur.*

11